IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE Y. BROWN**, pro se, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 5963 |
| | ) | |
| **HEALTH CARE SERVICE CORPORATION** | ) | |
| and **RAYMOND E. BISANZ**, individually, | ) | |
| Vice-President Enterprise Resource Management -- | ) | |
| Health Care Service Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Like so many aspects of this vigorously contested litigation that ended with the grant of summary judgment in favor of Health Care Service Corporation ("Health Care") and its codefendant Raymond Bisanz against pro se plaintiff Michelle Brown ("Brown"), the most recent filings by Brown have created needless complications. In this instance Brown's initial response to this Court's August 18 order regarding sanctions that this Court had imposed against her, as to which Health Care had provided a detailed request seeking $13,811 as partial reimbursement for added legal expenses it had incurred by reason of her sanctionable conduct, Brown first provided an August 20 response that began in this fashion:

> Ms. Brown files this statement in response to the court's order and states that Ms. Brown did not receive a filing from HCSC on March 4, 20l4 via e-mail or U.S. Mail and there is no entry for March 4,2014 of a filing by HCSC by the Office of the Clerk of the U.S. District Court ("clerk") for any filing by HCSC. As Ms. Brown and the clerk have no receipt of a March 4, 2014 filing, Ms. Brown is unable to provide the response ordered by this court.

This Court swiftly responded with an August 21 memorandum order that credited Brown's statement, explained the procedures normally followed in this District Court where such proposed sanctions are in issue, and concluded by stating:

> This Court of course does not fault non-lawyer Brown for her unfamiliarity with that practice, but it is of course troubled by her other assertion that counsel for Health Care had never provided her with its initial claim for $13,811.00 -- this Court had simply credited Health Care's counsel's representation that it had apprised her of its claim back on March 4 of this year. It expects Health Care's counsel to respond to Brown's assertion in that respect forthwith.

What came next was the first occasion in the checkered history of this lawsuit in which Brown acknowledged that she had been wrong in any of her assertions -- she filed an August 25 "addendum" to her earlier August 20 response that stated:

> Upon further research, Ms. Brown has located HCSC's March 4, 2014 itemization in her e-mail with a March 6, 2014 date. The mail server of "Yahoo" has a quirk that does not retain the original date in its e-mail listing if a response is made to the e-mail. Ms. Brown responded to HCSC's March 4, 2014 e-mail on March 6, 2014 and the date of the e-mail is listed as March 6, 2014. **(Exhibit A).** Ms. Brown has not been able to locate the mailing sent U.S. Mail by HCSC. Ms. Brown apologizes to the Court and HCSC for any confusion caused by Ms. Brown's August 20, 2014 response.

All of this leads back to Ex. B to that addendum: the "Plaintiff's Response to Defendants' Demand for Sanctions" that Brown filed March 13, 2014 as Dkt. 144 and on which she has now chosen to stake out her position. In that respect she objects first to the imposition of sanctions as such, but those objections are obviously wholly without merit -- instead the present question for decision is the quantification of those sanctions. Accordingly this opinion will limit itself to the portion of Brown's March 13, 2014 filing that speaks to the latter subject (its pages 4-6).

It is all of a piece with Brown's belief that she does not need a lawyer (and the likely underlying premise that she can do the job better pro se than through counsel) that she has decided that the work for which reimbursement is sought should instead have been performed by

paralegals. Listen to her lecture on the subject (only a verbatim quotation provides the full flavor):

> Paralegals perform substantive legal work for which a supervising attorney is ultimately responsible. Paralegals are responsible for handling tasks such as legal writing, research, and other forms of documentation for the lawyers for whom they work. The work that is primarily described in Littler's bill for attorney fees are functions completed by paralegals. In the interest of keeping a client's bill reasonable, freeing up attorneys for more substantive work, lawyers delegate research, legal writing and documentation to paralegals. It is improper delegation by partners to lose the opportunity to earn fees on bringing in business, manage trial cases and appearances in Court to complete work that is assigned to paralegals. Most of the work included on Littler Mendelson's bill for attorney fees is paralegal work. If Littler did not manage its resources properly, Plaintiff should not have to pay excessive fees at a partner's rate. Paralegals average $60,000 a year which equates to approximately $28 dollar per hour. Littler's demand for $13,118.00 is egregious.

That of course is a total absurdity -- it betrays a total ignorance of the nature and scope of the training and functions of paralegals in the legal system. But that distorted view might perhaps have been expected from Brown, whose self-evaluation has resulted in the mistaken belief that her own attempted analysis of the law is somehow superior to that of her adversary's counsel -- and is indeed superior as well to that of this Court.

But even apart from that, Brown's ipse dixit across-the-board downgrading of lawyers' services is directly at odds with the relevant caselaw. What our Court of Appeals said in the comparable context of awarding legal fees by way of indemnification in <u>Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.</u>, 73 F.3d 150, 153 (7th Cir. 1996) might well have been written for this case:

> Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not "evidence" about market value; it is market value. Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay. Balcor asked Walentas to make good its actual outlays. Although Walentas denies that Balcor got its money's worth, it does not deny that

these were real bills that Balcor paid and it does not argue that Balcor's lawyers ran the meter because they thought that Walentas would have to cover the tab.[1]

In sum, Brown's earlier filing on which she has chosen to rely as her current response fails entirely. Health Care's request for $13,118 as the appropriate measure for the original award of sanctions, to which should be added its more recent request for an additional $1,609 (an amount that was found entirely reasonable and was granted in this Court's August 18 opinion), is ordered to be paid by Brown. Accordingly judgment is ordered to be entered in favor of Health Care and against Brown in the aggregate sum of $15,420 -- a separate judgment pursuant to Budinich v. Becton Dickinson & Co., 807 F.2d 155 (10th Cir. 1986).

                                                               */s/ William D. Shadur*
                                                           Milton I. Shadur
                                                           Senior United States District Judge

Date: August 26, 2014

---

[1] [Footnote by this Court] Although the text quotation was selected because the situation described there -- the attempted denigration of the amount billed by counsel and paid by the client as the appropriate measure of reimbursement of legal expenses -- has most nearly paralleled this case from among the authorities located in a nonexhaustive search, Brown should not misapprehend from the vintage of the Balcor case that what Judge Easterbrook said for the panel there was only a voice crying in the wilderness. Exactly the opposite is true -- that same nonexhaustive search has turned up such post-Balcor cases as Kallman v. Radioshack Corp., 315 F.3d 731, 742 (7th Cir. 2002), TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 593 (7th Cir. 2005), Cintas Corp. v. Perry, 517 F.3d 459, 469-70 (7th Cir. 2008) and Matthews v. Wis. Energy Corp., 642 F.3d 565, 572-73 (7th Cir. 2011), all of them citing (or citing and quoting) Balcor and all of them articulating and applying the identical principle.